IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00281-RBJ

MARK WILSON, and all others similarly situated under 29 USC § 216(b),

    Plaintiff,

v.

SCHLUMBERGER TECHNOLOGY CORPORATION,

    Defendant.

## ORDER ON PARTIAL MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant Schlumberger Technology Corporation's ("STC") partial motion for summary judgment. ECF No. 84. For the reasons stated below, defendant's motion is DENIED.

### I. BACKGROUND

**A. Factual Background.**

STC is a Texas corporation that provides measurement and logging services to oil and gas companies. ECF No. 1 at 4. Plaintiffs Mark Wilson, Kurtis Bisnette, and Lisa Moss worked for STC as measurement-while-drilling operators ("MWD operator").[1]  *Id.* at 2; ECF No. 84 at 2. As MWD operators, plaintiffs operated oilfield machinery, collected and relayed drilling data,

---

[1] According to defendant's motion, Mr. Wilson worked as an MWD 2 whereas Mr. Bisnette and Ms. Moss worked as an MWD. ECF No. 84 at 2–4. Defendant further classifies both Messrs. Wilson and Bisnette as "MWD Specialists," and Ms. Moss as an "MWD Engineer" because of her engineering degree. *Id.* at 2 n.3. The significance of these specific job titles is unclear, but both parties generally treat all three plaintiffs as basic MWD operators.

and reported their daily activities to their field supervisors for analysis.  *Id.* at 5.  According to the complaint, plaintiffs' job duties were primarily manual and technical in nature, required no advanced degrees or training, and did not involve supervisory or managerial functions.  *Id.*

STC compensated plaintiffs pursuant to a scheme whereby it paid plaintiffs a base salary plus a day rate.  *Id.* at 5.  The complaint alleges that Mr. Wilson worked shifts that lasted longer than 12 hours and totaled more than 40 hours a week, sometimes as many as 80 hours.[2]  *Id.*  Plaintiffs allege that STC's payment scheme violated the Fair Labor Standards Act ("FLSA") and the Colorado Wage Claim Act because it failed to compensate plaintiffs for their overtime hours.  *Id.* at 5–6.  Plaintiffs aver that STC changed its pay practice for MWD operators in November 2016.  ECF No. 87 at 18.

### B. Procedural Background.

There are at least two additional ongoing lawsuits against STC alleging misclassification of MWD operators.  On July 8, 2014 several STC employees filed a collective action lawsuit against STC in the Western District of Louisiana alleging FLSA violations.  *See Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-02267 (W.D. La.) ("*Boudreaux*").  The *Boudreaux* case is pending without a decision on the merits, but the latest motion filed on April 10, 2019 was a motion to stay the matter for 60 days to allow the parties to finalize the remaining terms of their settlement of the MWD class.  On January 7, 2016 a separate group of STC employees filed a similar suit against STC in the Western District of Texas.  *See Gilchrist v. Schlumberger Tech.*

---

[2] It is unclear from the pleadings the number of hours that Ms. Moss and Mr. Bisnette worked.  Both opted in to the case on May 19 and May 26, 2018, respectively, four months after Mr. Wilson filed his complaint.  *See* ECF Nos. 28, 29.

*Corp.*, No. 1:16-CV-0008 (W.D. Tex.) ("*Gilchrist*").[3] This case also remains pending. Finally, on April 1, 2016, another MWD operator filed suit against STC alleging FLSA violation. *See Mascagni v. Schlumberger Tech Corp.*, No. CV 16-439, 2017 WL 3648315, at *1 (W.D. La.) ("*Mascagni*"). This case settled in November 2017 without a decision on the merits.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

In its motion, STC contends that plaintiffs are exempt from overtime pay under the Highly Compensated Employee ("HCE") exemption, 29 C.F.R. § 541.601. ECF No. 84 at 1.

---

[3] Mr. Wilson originally attempted to opt in to *Gilchrist*, but STC opposed the joinder. He then tried to opt in to *Boudreaux*, but STC opposed that motion as well. As such, Mr. Wilson filed suit in this district.

STC further contends that plaintiffs cannot meet their burden of showing willfulness, thus precluding some or all of plaintiffs' claims under the two-year statute of limitations contained in 29 U.S.C. § 255(a). *Id.* I address each argument in turn.

### A. **Highly Compensated Employee Exemption, 29 C.F.R. § 541.601.**

Evidence that an employee is highly compensated "is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c). Under this streamlined approach, the HCE exemption applies to employees whose total annual compensation exceeds a certain threshold[4] so long as the "employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee" and the employee's "primary duty includes performing office or non-manual work." 29 C.F.R. § 541.601(a)–(d).

As the employer, STC bears the burden to prove that plaintiffs fall within the HCE exemption. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 826 (10th Cir. 2012). However, following the Supreme Court's holding in *Encino Motorcars, LLC v. Navarro*, the employer's burden is somewhat relaxed; courts are to give the exemption provisions a "fair (rather than a 'narrow') interpretation." 138 S. Ct. 1134, 1142 (2018).

Plaintiffs do not dispute that their total annual compensation exceeded the regulation's threshold. ECF No. 87 at 11. But they do dispute STC's position that they customarily and regularly performed an administratively exempt duty. *Id.* They also contend that they performed mostly "'blue collar' manual labor." *Id.* Because "[t]he question of how an employee spends his

---

[4] The annual compensation threshold is currently set at $134,004, *see* 29 C.F.R. § 541.601(b), but during the time period at issue in this case, the threshold was $100,000. *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 148 (2d Cir. 2013).

time is a question of fact," defendant must demonstrate the absence of a genuine dispute using competent summary judgment evidence. *See Burke v. Alta Colleges, Inc.*, No. 11-CV-02990-WYD, 2014 WL 2882807, at *3 (D. Colo. June 25, 2014) (quoting *Jastremski v. Safeco Ins. Co.*, 243 F. Supp. 2d 743, 747 (N.D. Ohio 2003) (internal quotation omitted)).

    1.   Duties and Responsibilities of Administrative Employees, 29 C.F.R. § 541.201.

Defendant argues that plaintiffs customarily and regularly perform exempt duties of an administrative employee. ECF No. 84 at 16. Customarily and regularly, as defined by the regulation, means "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. "To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a). General business operations include, but are not limited to, functional areas such as quality control, legal and regulatory compliance, tax, finance, accounting, human resources, and safety and health. *Id.* at § 541.201(b).

Defendant argues that plaintiffs performed at least two administrative duties related to STC's management or general business operations. ECF No. 84 at 16. First, defendant argues that plaintiffs performed quality control work. *Id.* Second, defendant argues that plaintiffs were responsible for legal and regulatory compliance.[5] *Id.* To support these arguments, defendant

---

[5] Defendant also states that "Plaintiffs act[ed] as advisors and consultants to STC's customers by assisting them with the performance of their wells." ECF No. 84 at ¶50. But defendant simply cites to 29 C.F.R. § 541.201(c) for this assertion, which states that employees serving as advisers or consultants to their employer's clients or customers may be exempt. Id. at § 541.201(c). Defendant makes no attempt to show how plaintiffs consulted or advised STC's clients; thus, I will not address this argument.

cites to plaintiffs' deposition testimony.  Plaintiffs dispute these arguments by citing to the same depositions plus the testimony of STC's Rule 30(b)(6) representative, Mr. Alexander Grobbel.

Having reviewed the deposition testimony, it is anything but clear that plaintiffs performed quality control work.  While it is true that Mr. Wilson admitted that he reviews files and reports for spelling errors or missing data prior to sending them to the client, *see* ECF No. 87-2 at 345:1–10, he also testified that computer programs complete most of the quality control. *Id.* at 336:20–21.  Ms. Moss also testified that she didn't perform quality control work.  *See* ECF No. 87-3 at 91:1–4.  Finally, Mr. Grobbel stated that the operations support center completed much of the quality control.  ECF No. 87-1 at 90:17–25; 132:1–14.  On this issue, there is clearly a genuine fact dispute concerning plaintiffs' role in quality control work and whether their work is directly related to the general business operations.

It is equally clear that there is a genuine fact dispute as to plaintiffs' duties and responsibilities regarding legal and regulatory compliance.  Again citing to deposition testimony, defendant states that Mr. Wilson submitted required reports on behalf of STC, including sworn statements and final survey reports, with the Texas Railroad Commission when he was based in Midland, Texas.  ECF No. 84 at ¶48.  Likewise, Mr. Bisnette submitted numerous surveys to the state agency in North Dakota as required by state regulations.  *Id.* at ¶49.  This is proof, according to defendant, that plaintiffs were responsible for ensuring that STC complied with all legal and reporting requirements.  *Id.* at 16.

The evidence before me does not support defendant's position.  Mr. Grobbel testified that STC's client is responsible for regulatory compliance, not STC or its MWD operators.  *See* ECF No. 87 at 7 (citing ECF No. 87-1 at 237:1–11).  Moreover, Mr. Grobbel averred that the state

communicates directly with the client because the client owns the wellbore. *Id.* (citing ECF No. 87-1 at 136:7–17). Again, there remains a dispute regarding plaintiffs' role in STC's regulatory compliance and which entity is responsible for this task. Therefore, summary judgment is inappropriate based on the evidence in the record.

Finally, plaintiffs broadly deny that their work relates to the management or general business operations of STC. ECF No. 87 at 2–4. Instead, plaintiffs argue that they are simply "production employees," hired to produce the products and services, such as survey data, that STC provides to its customers. *Id.* at 3–4. This appears to be in accord with Mr. Grobbel's testimony, who testified that the client sets the requirements as to the accuracy of each survey. ECF No. 87-1 at 212:9–15. Of course, defendant counters by arguing that MWD operators are not production workers but rather "nonmanual workers who analyzed data, quality controlled it, and reported it to the customers in support of the customers' general business operations." ECF No. 90 at 4. Whether the survey data that plaintiffs create relates to the general business operations of STC, or whether plaintiffs generate the very product that STC offers to its clients, remains a genuine dispute. Differing inferences can be drawn from the undisputed duties that plaintiffs performed, thus making this issue better suited for a jury to decide.

In sum, defendant has failed to demonstrate the absence of a genuine dispute concerning whether plaintiffs customarily and regularly performed an exempt duty or responsibility of an administrative employee. I note that my decision is in accord with other district courts that have considered this very issue against STC—both the *Mascagni* and *Gilchrist* courts found that there was a genuine dispute as to whether the plaintiffs, all of whom were MWD operators,

customarily and regularly performed work directly related to the management or general business operations of STC or its customers.

    2. <u>Plaintiffs' Primary Duty Must Include Performing Office or Nonmanual Work, 29 C.F.R. § 541.601(d)</u>.

According to defendant, plaintiffs admit that they primarily performed nonmanual work. ECF No. 84 at 15. But this is not a fair representation of the evidence before me. According to Mr. Grobbel's testimony, MWD operators are responsible for rigging up and rigging down the well site. ECF No. 87-1 at 250:1–3. Mr. Wilson testified that it takes a two-person MWD crew approximately twelve hours to rig up a well site and the same time to rig down. ECF No. 84-1 at 326: 2–17. Apparently this duty is important and strenuous enough that STC required MWD operators to meet certain physical requirements as part of its terms of employment. *Id.* at 116:15–24; *see also* Mr. Wilson's Terms of Employment, ECF No. 87-5 (noting the requirement to pass a job-specific functional capacity examination as a condition of employment). Moreover, Mr. Wilson testified that his "primary job as an MWD was to go to the job, rig it up, make sure that everything worked, collect the data, report it, rig it down." ECF No. 87-2 at 329:11–16.

The nature of plaintiffs' work yet again presents a genuine factual dispute. Mr. Wilson testified that the length of time he spent at one well site varied wildly, ranging from two to three days to 45 days. ECF No. 84-1 at 326:20–21. Accounting for the twelve hours to rig up and another twelve hours to rig down, a reasonable juror could conclude that plaintiffs primarily performed manual labor, at least on short-term projects. On balance, I cannot determine as a matter of law the amount of time plaintiffs spent performing manual work as MWD operators. Accordingly, defendant's summary judgment on the HCE exemption is denied.

### B. Willful Violations of the FLSA, 29 U.S.C. § 255(a).

Defendant also moves for summary judgment on the issue of willfulness. ECF No. 84 at 17. It contends that plaintiffs have not put forth any competent summary judgment evidence showing that defendant knew it was violating the FLSA or that it showed reckless disregard for the statute. *Id.* A ruling in defendant's favor on this issue would likely bar Ms. Moss's and Mr. Bisnette's claims under the standard two-year limitations period, and Mr. Wilson's claims would be limited from January 30, 2015 through October 14, 2016. Plaintiffs do not dispute the effect this ruling would have on their claims. Instead, they respond by arguing that defendant willfully violated the FLSA when it faced multiple lawsuits and investigations yet failed to institute changes to its pay structure. ECF No. 87 at 15–19.

Under the FLSA, the statute of limitations for unpaid overtime compensation is two years after the cause of action accrued, except upon a showing that the employer willfully violated the statute. 29 U.S.C. § 255(a). In that case, a three-year limitations period governs. *Id.* It is the employee's burden to show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1183, 1187 (N.D. Okla. 2006) ("The burden is on the employee to prove that the employer committed a willful violation."). A showing of negligence or an employer's incorrect assumption that a pay plan complies with the FLSA is insufficient. *See McLaughlin*, 486 U.S. at 133. Finally, because "willfulness [under the FLSA] is a question of fact," summary judgment is inappropriate if the nonmoving party produces specific evidence that shows a genuine fact dispute. *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009).

I agree with defendant that plaintiffs have yet to provide competent summary judgment evidence to show that defendant willfully violated the FLSA. Plaintiffs assert that "STC's record of being sued for FLSA violations, including at least three other cases for MWD misclassification, puts it on notice of its FLSA violations." ECF No. 87 at 7. But plaintiffs have made this argument before, and each time, the district court rejected it. In *Mascagni*, the court granted summary judgment in favor of STC on its willfulness argument after finding that the existence of FLSA lawsuits lodged against STC was insufficient when no court ever ruled that STC violated the FLSA. No. CV 16-439, 2017 WL 3648315, at *7 (W.D. La. Aug. 22, 2017). More recently, in *Gilchrist*, the court noted that the existence of "35-plus FLSA lawsuits against STC" is relevant to willfulness, but the court ultimately recommended granting summary judgment on the issue because the employees failed to provide any other evidence. No. 1:16-CV-008-LY, 2018 WL 4169313, at *7 (W.D. Tex. June 4, 2018), report and recommendation adopted, No. 1:16-CV-8-LY, 2018 WL 4178326 (W.D. Tex. July 27, 2018). Here, I reach the same conclusion as the *Mascagni* and *Gilchrist* courts concerning the probative value of parallel lawsuits against defendant. Plaintiffs still do not cite to any case that has ruled that defendant violated the FLSA's overtime compensation requirements regarding any employee, let alone an MWD operator.

Notwithstanding my above conclusion, there has been a new development since the *Mascagni* and *Gilchrist* courts considered STC's summary judgment motions. At the January 10, 2019 trial preparation conference in this Court,[6] plaintiffs' counsel notified the Court that

---

[6] The day after the trial preparation conference, the parties filed a joint motion to continue trial. ECF No. 92. I granted that motion and reset the trial for October 21, 2019. ECF No. 93.

plaintiffs had recently discovered new evidence that would prove its willfulness claim. The new evidence came to light through a discovery dispute in the pending *Boudreaux* case. Through STC's pleadings, plaintiffs discovered that STC retained outside counsel to conduct an internal audit of its compensation structure. Plaintiffs believe that the audit advised STC that MWD operators should have been classified as nonexempt employees. STC took the position that this audit is privileged, but the magistrate judge in *Boudreaux* ruled that STC had waived that privilege. STC appealed the decision to the presiding district judge. I ruled that defendant must provide plaintiffs a copy of the audit so long as the district judge affirms the magistrate judge's waiver ruling. However, in the event that the district judge disagrees with the magistrate judge, I told the parties that I would follow that ruling as well. To my knowledge, the district judge has yet to rule on the matter.

If plaintiffs prevail on their waiver dispute, and if the audit advised STC that its pay plan for MWD operators violated the FLSA, a reasonable juror could conclude that defendant willfully violated the FLSA. "Courts have found willful violations where the evidence showed . . . admissions that an employer knew its method of payment violated the FLSA . . . [or a] continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA . . . ." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 688 n.1 (S.D. Tex. 2013) (quotation omitted)). This audit, if discoverable, may show that defendant knew it was violating the FLSA or, at the least, put it on notice that it should further investigate its pay practices. Accordingly, based on my ruling at the trial preparation conference, I find the issue of willfulness in this case to be premature. Defendant's motion on willfulness is therefore denied.

**ORDER**

For the reasons stated above, defendant's motion for summary judgment [ECF No. 84] is DENIED.

DATED this 24th day of April, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge