IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00281-RBJ

MARK WILSON, and all others similarly situated under 29 USC § 216(b),

     Plaintiff,

v.

SCHLUMBERGER TECHNOLOGY CORPORATION,

     Defendant.

---

## ORDER ON POST-TRIAL MOTIONS

---

This matter is before the Court on defendant Schlumberger Technology Corporation's ("STC") motion for judgment as a matter of law, or alternatively, for a new trial, ECF No. 162, and plaintiff's motion to amend the final judgment to include liquidated damages, costs, attorney's fees, and interest, ECF No. 163. For the reasons stated below, defendant's motion is DENIED and plaintiff's motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

STC is a Texas corporation that provides measurement and logging services to oil and gas companies. ECF No. 1 at 4. Mark Wilson worked for STC as a measurement-while-drilling operator ("MWD"). As such he operated oilfield machinery, collected and relayed drilling data, and reported their daily activities to their field supervisors for analysis. Wilson worked shifts that lasted longer than 12 hours and totaled more than 40 hours a week, sometimes as many as 80 hours. He contended that STC's compensation program for MWD's violated the Fair Labor

Standards Act ("FLSA") and the Colorado Wage Claim Act because it failed to pay them for their overtime hours.

The case was tried to a jury October 5-9, 2020.[1]  The jury found that Wilson worked more than 40 hours during at least some work weeks and awarded him overtime compensation as damages in the amount of $39,129.  ECF No. 138 (jury verdict, names of jurors redacted).  On October 13, 2020 the Court entered final judgment in favor of the plaintiff in the amount of the $39,129 plus costs to be taxed by the Clerk.  ECF No. 139.  On November 10, 2020 the Clerk denied plaintiff's bill of costs as untimely.  ECF No. 157.

Neither party is satisfied with the jury's or the Court's resolution of the case.  Although the Court denied STC's motion for judgment as a matter of law at the conclusion of plaintiff's case, and again at the conclusion of defendant's case, STC continues to seek dismissal.  Plaintiff, on the other hand, asks the Court to beef up his verdict by adding liquidated damages, costs, attorney's fees, and interest.  The issues have been fully briefed.  Neither party has requested a hearing.

## ANALYSIS and CONCLUSIONS

### A.  **Defendant's Motion for Judgment Notwithstanding the Verdict, ECF No. 162.**

STC contended at trial that Wilson was exempt from overtime under the "administrative exemption" as defined in Instruction No. 8.  ECF No. 130 at 10.  One component of the administrative exemption is that plaintiff must have been compensated on a "salary basis."  *Id.* The evidence was that Wilson was compensated by a combination of (1) a biweekly base salary

---

[1] Two other  former MSD's also asserted claims in this case.  However, their claims were dismissed by the Court at the conclusion of plaintiffs' evidence.

that was fixed and consistent from week to week; (2) a rig day rate, sometimes called a rig day

bonus or simply a day rate, that varied according to the employee's length of time on the rig; (3)

vehicle and meals allowances; and (4) depending upon the situation, a standby rate, a reduced

crew incentive and a key tech bonus. The rig day rate could be the largest component of an

employee's compensation. For example, in 2014, Wilson's salary payments totaled $28,812.90.

However, his rig day rate payments totaled $72,150. *See, e.g.,* ECF No. 141 at 67-71 (trial

transcript, testimony of Mark Wilson).

Defendant argued that Wilson was nevertheless paid on a "salary basis." Plaintiff argued

that his salary was just one component of his compensation and not even the primary component.

An FLSA regulation, 29 C.F.R. § 604, addresses the issue. However, the parties disagree as to

whether subpart 604(a) or 604(b) applies to Wilson's compensation.

Section 604(a) provides:

> An employer may provide an exempt employee with additional compensation
> without losing the exemption or violating the salary basis requirement, if the
> employment arrangement also includes a guarantee of at least the minimum
> weekly required amount paid on a salary basis.

As examples, the exempt employee could be guaranteed at least $455 (now $684) "paid

on a salary basis" plus a one percent commission on sales, or a percentage of the employer's

sales or profits, or additional compensation based on hours worked beyond the normal

workweek.

Section 604(b) addresses daily rate employees. It provides,

> An exempt employee's earnings may be computed on an hourly, *daily* or shift
> basis without losing the exemption or violating the salary basis requirement, if the
> employment arrangement also includes a guarantee of at least the minimum
> weekly required amount paid of a salary basis regardless of the number of hours

days or shifts worked, *and a reasonable relationship exists between the guaranteed amount and the amount actually earned.*

29 U.S.C. § 604(b) (emphasis added).

Section 604(a), taken in isolation, is broad enough to encompass any compensation system that includes a minimum guaranteed fixed amount. But it must be viewed together with section 604(b), which expressly addresses salary plus daily rate systems. There is no interpretive Tenth Circuit law on point, but in a case involving the "executive" and "highly compensated employee" exemptions a panel of the Fifth Circuit discussed compensation of daily rate workers. *Hewitt v. Helix Energy Solutions Group, Inc. ,* 983 F.3d 789 (5th Cir. 2020), *vacated and rehearing en banc granted,* 989 F.3d 418 (5th Cir. March 9, 2021). As indicated, the panel's decision has since been vacated, and it would not be binding on this Court in any event. However, I find its reasoning in relevant part to be persuasive. Not only does section 604(b) specifically address daily rate workers, but "the reasonable relationship test ensures that the minimum weekly guarantee is not a charade." *Id.* at 793.

Here, the evidence was that Wilson was primarily compensated on a daily rig rate basis. Plaintiff argued that defendant's payment of a guaranteed salary that constituted a minority of Wilson's compensation plus a daily rate that constituted by far the majority of his compensation was a ruse to circumvent the overtime law. Plaintiff did not prove that STC intentionally created this compensation program to avoid the overtime laws. The fact remains that there was, at the least, a fact dispute as to whether there was a reasonable relationship between Wilson's guaranteed bi-weekly salary and the amount he actually earned on a daily rate basis.

Accordingly, after considering the parties' respective positions on several occasions, and over defendant's objection, the Court instructed the jury as follows:

# JURY INSTRUCTION NO. 10

STC contends Plaintiff was paid on a "salary basis." Being paid on a "salary basis" means the employee regularly receives (e.g., on a weekly basis) a predetermined amount constituting all or part of the employee's compensation. Employees who are paid on a salary basis and make more than a set amount per week are considered exempt under the FLSA.

An employer may pay a salary basis employee additional compensation without losing the employee's exempt status if the employee's compensation includes a guarantee of at least the minimum weekly required amount paid on a salary basis and if the additional compensation bears a reasonable relationship to the guaranteed amount. If there is *not* a reasonable relationship between the guaranteed salary amount and the total amount earned by the employee, then the employee is *not* being paid on a salary basis. In that situation the employee is no longer exempt. The reasonable relationship test will be met if the weekly salary guarantee is roughly equivalent or proportional to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.

Plaintiff contends that STC did not pay him on a salary basis. Plaintiff contends that the additional compensation paid to him in the form of bonuses did not bear a reasonable relationship to the guaranteed salary amount such that the overall compensation does not constitute compensation on a "salary basis."

ECF No. 130 at 16.

I stand by my view that Instruction No. 10 properly instructed the jury on the meaning of being paid on a "salary basis." The evidence supported the instruction. The jury found that Wilson was not paid on a "salary basis" as defined in the instruction. ECF No. 138 at 1. Therefore, the Court denies the motion for judgment notwithstanding the verdict.

## B. **Plaintiff's Motion to Alter or Amend**, ECF No. 163.

Plaintiff requests four additions to the Final Judgment.

1. Liquidated damages.

Section 216(b) of the FLSA provides that employers who violate the Act's overtime requirement may be assessed an "additional equal amount as liquidated damages." 29 U.S.C. §

216(b). "The only instance where a court may exercise discretion in not awarding liquidated damages is when an employer shows that its action was in good faith and that it had reasonable grounds for believing the failure to pay overtime compensation was not a violation of the FLSA." *Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345, 1351 (10th Cir. 1986).

As noted above, plaintiff did not prove that STC intentionally structured its system of compensating MWD's to evade overtime requirements. Thus, at the conclusion of plaintiff's evidence the Court granted defendant's motion for judgment as a matter of law on the issue of willfulness. *See* ECF No 143 at 127-28.[2] Moreover, defendant provided affirmative evidence of its compliance efforts. Mitchell Williamson was defendant's North American Compensation Manager from January 2014 through January 2018. ECF No. 143 at 211. He held a Society of Human Resources "certified professional" designation which was based on training in compensation practices. *Id.* at 212. At STC he was in charge of a 19-employee compensation department. *Id.* He and others in his department participated in internal seminars on compensation issues. *See id.* at 218. In addition, the company retained external counsel to "do periodic training through our compliance department to make sure that we were keeping, not only the compensation department, abreast of FLSA issues or potential issues, and making sure that everybody understood what exactly we needed to be cognizant of." *Id.* at 217.

Based on the evidence presented by the defendant in this case, as well as the absence of contrary evidence presented by the plaintiff, the Court finds that the defendant's program, though not in compliance with overtime requirements, was established in good faith and the reasonable

---

[2] As a result of the Court's ruling on willfulness, the claims of additional plaintiffs Kurtis Bisnette and Lisa Moss were dismissed on limitations grounds. ECF No. 143 at 128.

belief that the administrative exemption applied. Accordingly, the Court exercises its discretion to deny an award of liquidated damages in this case.

2. <u>Costs</u>.

The Court awarded costs to the plaintiff as the prevailing party, to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. ECF No. 139. On November 10, 2020 the Clerk found that plaintiff's bill of costs was not timely filed and denied an award of taxable costs. *See* ECF No. 158. However, due to an extension granted by the Court on the same day but unknown to the Clerk, the bill of costs was timely filed. *See* ECF Nos. 156, 157, 160. The bill of costs requested an award of $3,690.17. However, plaintiff now requests a total award of $7,708.50, including certain costs actually incurred but not taxable under 28 U.S.C. § 1920.

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, *and costs of the action*." 29 U.S.C. § 216(b) (emphasis added). Defendant objects to only to approximately $800 of hotel expenses and $150 for a printer that can be used again for other matters. Plaintiff's reply does not make any attempt to explain or justify those items. Accordingly, the Court awards plaintiff $6,758.50 in costs.

3. <u>Attorney's Fees</u>.

The statute provides for an award to the plaintiff of a "reasonable attorney's fee." In determining the reasonableness of attorney's fees the Court first determines the "lodestar," meaning the product of hours reasonably expended times a reasonable hourly rate. The lodestar is presumed to a be a reasonable rate, although it is subject to adjustment by the Court. *See*

*Robinson v. City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998). In determining the reasonableness of the hours and rates, courts often apply the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974].[3] The Colorado Rules of Professional Conduct provide a similar list of relevant factors.[4]

Plaintiff presents a lodestar of $164,099.00. ECF No. 163 at 7. This is for 437.93 hours billed for four timekeepers at hourly rates ranging from $550 to $150 per hour. *Id.* Plaintiff represents that certain time entries (including small amounts of time for three additional timekeepers) were eliminated as a matter of billing judgment. *Id.* Plaintiff also eliminate 45.35 hours which were attributed to the dismissed claims of plaintiffs Bisnette and Moss. *Id.* at 8. Plaintiff provides the declaration of lead counsel Derek Braziel, chronicling his education and extensive FLSA experience and that of the two junior lawyers and one law clerk who billed hours included in the proposed lodestar. ECF No. 163-1.

---

[3] *Johnson* lists 12 factors for courts to consider in determining reasonableness: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

[4] The Colorado Rules of Professional Conduct are found as an Appendix to Chapters 18 to 20, Colorado Court Rules – State (2018). These factors identified in Rule 1.5 are (1) time and labor required, (2) likelihood of preclusion of other employment, (3) fee customarily charged in the locality, (4) amount involved and results obtained, (5) time limitations imposed by the client or circumstances, (6) nature and length of the professional relationship, (7) experience, reputation, and ability of the lawyer(s), and (8) whether the fee is fixed or contingent.

Defendant objects to the lodestar amount on multiple grounds:

- The fee request includes more than $19,000 for "unsuccessful motions and claims," i.e., defendant's motion to dismiss Schlumberger Ltd; plaintiff's motion to certify a class; defendant's motion to dismiss opt-in plaintiff Cooper; defendant's motion to sever; discovery motions.  ECF No. 172 at 9-11.

- Lead counsel Braziel's hourly rate of $550 is excessive for the Denver market. Defendant suggests $390 for Mr. Braziel and $275 for the principal junior lawyer, Travis Gaspar who was billed at $350.  *Id.* at 11-12.

- Plaintiff's "limited success."  Plaintiff's amended initial disclosures sought $461,659.97, but the verdict was only $39,129.

Based on these factors defendant suggests that the Court divide the requested amount in half, i.e., to $72,183,50.  Defendant then turns to the "*Johnson* factors" for consideration of further reductions.  Defendant does not dispute the hours listed.  However, counsel suggests that the questions presented were neither novel nor difficult -- a "run of the mill case" for experienced counsel.  *Id.* at 13.  It reiterates its comments on the result obtained.  Notably, however, defendant does not inform the Court of the hourly rates, the hours, or the total billings that defense counsel billed STC for this case.

In reply plaintiff does not respond to any of defendant's points.  Rather, plaintiff states that he agrees with some of defendant's statements and disagrees with others, but rather than "try the Court's patience" with another motion, plaintiff "rests on its initial brief" with respect to attorney's fees.  ECF No. 180 at 3.

I began by putting this case in the context of other litigation between STC and its employees. *See* ECF No. 31. Wilson was one of numerous similarly situated employees who were potentially included in an FLSA collective action against STC in Louisiana (the "*Boudreaux* case"). However, long before that *Boudreaux* case was settled, Wilson exercised his right to opt out. Instead, Wilson attempted, unsuccessfully, to opt into another collective action in Texas (the *Gilchrist* case). STC opposed that attempt. Then Wilson tried to opt back into the *Boudreaux* case, but STC opposed a reopening of the opt-in period. That left Wilson with the choice of filing an individual action or letting it go, and he filed the present action. Thus, while there appears to have been some tactical maneuvering on both sides, this case exists because STC successfully kept Wilson out of the Louisiana and Texas cases.

With respect to defendant's specific objections to the lodestar, I am not inclined to single out each motion or claim where a plaintiff does not succeed and disallow fees related to that item. In every case there are successes and failures. I do agree, however, that given plaintiff counsel's history of litigation with STC, it should not have been necessary for Schlumberger Ltd. to move to dismiss for lack of personal jurisdiction. Plaintiff voluntarily dismissed the claim after the motion to dismiss was filed. I have no reason to question defendant's allocation of $2,044.50 of fee application to that matter, particularly since plaintiff offered no reply to defendant's objection. I also will exclude the $4,359.00 defendant ascribes to plaintiff's motion to conditionally certify a collective action. I indicated before that motion was filed that I would not certify any collective or class action on behalf of persons who were already members of a collection or class in the *Boudreaux* or *Gilchrist* cases. *See* ECF No. 31. Moreover, the point of this case was Wilson's need to proceed individually because he was frozen out of those cases. I

also agree to reduce the billing for travel time by $6,600. *See Wyrtz v. Kansas Farm Bureau Serv. Ins.,* 355 F. Supp. 2d 1190, 1199 (D. Kan. 2005) (reducing travel time to no more than 50% of the hourly rate deemed by the court to be appropriate).

Those deductions reduce the fee request to $151,095.50.

As for billing rates, I do not in the abstract have a problem with $550 per hour for a senior partner with extensive experience and success in FLSA collective action litigation or $350 per hour for a junior partner. Both parties note that Magistrate Judge Tafoya approved $430 per hour in 2013. *See Jankovic v. Exelis, Inc.,* No. 12-cv-01430-WJM-KMT (April 17, 2013) (alleged discrimination in violation of the Americans with Disabilities Act). Neither party provided information about what rates were used during the timeframe in question by the most experienced and highly reputed employment lawyers in Denver. Nor, as I have noted, did defense counsel reveal the rates that were billed to the defendant in this case.

However, I find that the advocacy provided by plaintiff's counsel in this case failed to justify the rates they were charging in one significant respect. They provided the jury essentially no help or guidance in how to determine the amount of overtime due. Instead, they just offered numerous time stubs into evidence and left it to the jurors to try to figure out from the morass of documents what amount to award. There was no expert testimony to guide their calculations. I questioned how the jury would calculate damages if they got to damages. ECF No. 143 at 130-32. Counsel responded that he thought the Court would calculate the amounts, not the jury. *Id.* at 132. He provided no authorities or analysis as to why, in a jury trial, the amount of damages would be calculated by the Court.

Nor, in any event, was there any clear path for the Court, much less the jury, to sort thought the voluminous records and come up with the right number. At one point the junior partner who recorded by far the most time in the case advised that Court that plaintiff would be asking for $60,000 in unliquidated damages. ECF No. 144 at 4. But in his closing argument lead counsel did not ask for $30,000 or $40,000 or $60,000 or any other amount, and he made no meaningful effort to explain how the jury could get to a number from the documents in evidence. He talked about one pay stub, went through a host of questionable calculations based on that pay stub, and that was it. ECF No. 144 at 48-52.

Astonishingly, defense counsel suggested in his closing that plaintiff was asking for $120,000. *Id.* at 73. But plaintiff's counsel never asked for $120,000. In his rebuttal plaintiff's counsel doubled down:

> I don't think I've ever given the jury any calculation. I want you to come up with what those numbers are. I don't want you to accuse me of baking something in. I want you all to look at the numbers and do that kind of calculation. You didn't hear from me that were seeking $120,000. If it comes out to that, then it does, but that's not something I've ever said. Mr. Wilson just wants to be paid fairly.

*Id.* at 79.

It is not unusual for a plaintiff's lawyer to leave it to the jury to come up with fair compensation for non-economic damages. But here the issue was not non-economic damages. It was for an amount of overtime which presumably could be precisely calculated from defendant's records. In my judgment, an experienced FLSA lawyer would either have an accounting expert make and explain the calculation based on the documents in evidence or, at least, would make a calculation himself and explain it during his closing argument. It is remarkable, and a tribute to

the jurors, that they came up with a number. The number was within ranges that were mentioned outside the presence of the jury when the possibility of settlement was mentioned.

Thus, while I do not question the experience and ability of plaintiff's counsel in FLSA cases generally, or that the rates used for this fee application might be reasonable in other contexts, in this case I find that the rates claimed in this case were not reasonable. Defendant proposes $390 per hour, and plaintiff has not responded to that proposal. Therefore, I accept it. That reduces plaintiff's fee application by $13,312 (83.2 hours times $160 per hour). The time spent by the principal junior partner on the case, Mr. Gaspar, was listed at $350 per hour. For the same reasons I find that that this rate was unreasonable for this case. The defendant proposes $275 per hour for him. Plaintiff has not responded, and I will accept that number. This reduces the amount of the request by $21,183.75 (282.45 times $75 per hour).

I realize that plaintiff's counsel were working on a contingent fee basis, although the specific agreement was not revealed. Thus, if the verdict had been for the defendant, they would have recovered nothing. That can be a factor supporting a larger fee award. Here, however, the fee awarded will be multiples of whatever the contingent fee would have been. I remain satisfied that, despite the risks plaintiff's counsel took in taking the case on a contingent basis and the importance of incentivizing lawyers to take potentially small but meritorious FLSA cases, the rates of $390 and $275 for Mr. Braziel and Mr. Gaspar were reasonable in this instance.

The result of these modifications is to reduce the amount requested to $116,599.75. I find that this is a reasonable attorney's fee and order STC to pay it.

## D. __Interest__.

Prejudgment interest may be awarded as a matter of discretion. *Pabst v. Oklahoma Gas & Elec. Co.,* 228 F.3d 1128, 1136 (10th Cir. 2000). If awarded, it runs from the time of the loss to the payment of the judgment. *Id.* The Court must determine whether the award of prejudgment interest will serve to compensate the injured party and, if so, whether the equities would preclude an award. *See Caldwell v. Life Ins. Co. of North America,* 287 F.3d 1276, 1286 (10th Cir. 2002). The rate need not be the same as the rate for post-judgment interest under 28 U.S.C. § 1961. *Id.* at 1287. Rather, it rests within the sound discretion of the district court. *Id.*

I find that prejudgment interest would compensate Wilson for the loss of use of overtime payments that should have been made. There are no equities that would preclude an award. Just as Wilson has lost the use of the money that should have been paid, STC has had the use of money that should not have been withheld. Neither party suggests an appropriate rate. In the absence of any suggestion or analysis from the parties, the Court in its discretion will use the Colorado prejudgment interest rate: eight percent per annum compounded annually from the date that the payments became due. *See* Colo. Rev. Stat. § 5-12-102(2).

As noted above, plaintiff's counsel elected to place in evidence a number of pay stubs and leave it to the jury to figure out overtime without the assistance of an expert witness or even a chart showing dates and amounts of overtime due but not paid. The Court does not know which pay stubs contributed which amounts to the ultimate verdict. Accordingly, the Court orders that prejudgment interest will run from the date of Wilson's last pay stub until the date of

this Amended Final Judgment. Post-judgment interest will run at the federal rate in place at the date of this Amended Final Judgment per 28 U.S.C. § 1961.

**ORDER**

For the reasons stated above,

1. Defendant's motion for judgment as a matter of law, or alternatively, for a new trial, ECF No. 162, is DENIED.

2. Plaintiff's motion to alter or amend the judgment, ECF No. 163, is GRANTED IN PART AND DENIED IN PART. The Court directs that an Amended Final Judgment be entered that includes in the award in favor of the plaintiff and against the defendant the following: $6,758.50 in costs; $116,599.75 in attorney's fees; prejudgment interest on the total of verdict amount plus costs and attorney's fees at eight percent per annum compounded annually from the date of plaintiff's last pay stub to the date of the Amended Final Judgment; and post-judgment interest on the total award at the applicable federal post-judgment rate pursuant to 28 U.S.C. § 1961 from the date of the Amended Final Judgment to the date the judgment is satisfied.

DATED this 7th day of June, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge